Filed 5/15/23  Mortensen v. Lichtenwalter CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EVA MORTENSEN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BRIAN LICHTENWALTER, <br><br> Defendant and Respondent; <br><br> SANTA CLARA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, <br><br> Intervenor and Respondent. | H047460 <br> (Santa Clara County <br> Super. Ct. No. 2012-6-CP-001102) |

Appellant Eva Mortensen challenges the trial court's child support order for her two children with respondent Brian Lichtenwalter.  She makes three contentions on appeal and argues that we should exercise de novo review.  First, she contends that the court erred in denying her request for a deviation from guideline child support.  She claims that a deviation was merited due to evidence that her monthly mortgage payments for her primary residence were a much higher percentage of her income than Lichtenwalter's monthly rent payments for his primary residence were of his income.  Second, she maintains that the court abused its discretion in failing to "include" the

amounts she spent on the children's "extracurricular" activities in calculating guideline child support. Third, Mortensen asserts that the court deprived her of due process in various ways. We find that the abuse of discretion standard applies here, and we find no abuse of discretion or deprivation of due process. Accordingly, we affirm the court's order.

## I.    DOCUMENTS OUTSIDE THE APPELLATE RECORD

"A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) "It is appellant's burden to demonstrate error by an adequate record [citation], and without an adequate record we must assume facts in support of the trial court's order." (*Vermeulen v. Superior Court* (1988) 204 Cal.App.3d 1192, 1198-1199.)

Mortensen, as the appellant, bore the burden of producing an *appellate record* upon which to base her contentions. "Appellate review is generally limited to matters contained *in the record*. Factual matters that are not part of *the appellate record* will not be considered on appeal and such matters should not be referred to in the briefs. [Citations.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102, italics added.)

Mortensen has not adhered to these basic rules. Instead, her appellate briefs rely heavily on numerous "exhibits" that she has attached or sought to attach to her briefs. "A party filing a brief may attach copies of exhibits or other materials *in the appellate record* or copies of relevant local, state, or federal regulations or rules, out-of-state statutes, or other similar citable materials that are not readily accessible." (Cal. Rules of Court, rule 8.204(d), italics added.) Only "exhibits . . . in the appellate record" are permitted to be attached to a brief. Because none of Mortensen's "exhibits" is "in the

appellate record," they were not properly attached to her briefs and cannot be considered in resolving her appeal.

We explain. Mortensen attached six exhibits to her opening appellate brief. Exhibit 1 appears to be a mortgage statement and a property tax bill, and exhibit 2 appears to be a spreadsheet. None of these documents is in our appellate record. Exhibit 3 appears to be a court order that is not in our appellate record. Exhibit 4 appears to be two nonconsecutive pages of a 12-page reporter's transcript that is not part of our appellate record. Exhibit 5 appears to be page three of five of a court order that does not appear in our appellate record. Exhibit 6 appears to be an email that was sent and received after the order that Mortensen challenges in this appeal. The email is not in our appellate record.

After her opening brief was initially rejected due to the attached exhibits, Mortensen responded with a letter (not a declaration). She stated in her letter that exhibits 1 and 2 were "part of the DCSS [(Department of Child Support Services)] record" that she had requested be included in the clerk's transcript but had not been included. Her notice of designation of the record sought inclusion in the clerk's transcript of unidentified "financial documents" "submitted . . . directly to the court" and "exchanged between the parties in court" on February 26, 2019. It also sought inclusion of "financial documents submitted to DCSS and exchanged between parties." Mortensen submitted no verification that exhibits 1 and 2 had been submitted to the court, so she failed to establish that these documents were part of or should have been part of the appellate record. Her letter asserted that exhibits 3 and 4 were also "part of the [DCSS] record" and "were inadvertently omitted" from her designation of the appellate record. She did not claim that these documents were before the court when it ruled. Since she neither designated them as part of the appellate record nor made any proper motion to augment the appellate record with these documents, they are not part of the appellate record. Mortensen claimed that exhibit 5 was a prior family court order and that exhibit 6

3

"could not be included in the record" because it "presented itself after" the challenged order. Neither of these claims supports her attachment of these documents, which are not part of the appellate record, to her opening appellate brief.

Mortensen also requested permission to attach six exhibits to her appellate reply brief. Exhibit 1 appears to be a page from a bank statement. Exhibit 2 appears to be the same order that was attached as exhibit 3 to her opening brief. Exhibit 3 appears to be part of another court order that does not appear in our appellate record. Exhibit 4 appears to be two nonconsecutive pages from a reporter's transcript of a December 2018 hearing that appears to have been at least 14 pages long. This transcript is not in our appellate record. Exhibit 5 appears to be a portion of a tax return. Exhibit 6 appears to be a W2.

Mortensen's letter in support of this request asserted that exhibits 1, 5, and 6 were documents she requested be included in the clerk's transcript but were not included. As we have already noted, her notice of designation of the record sought inclusion in the clerk's transcript of unidentified "financial documents" "submitted . . . directly to the court" and "exchanged between the parties in court" on February 26, 2019. It also sought inclusion of "financial documents submitted to DCSS and exchanged between parties." Mortensen did not submit any verification (such as a declaration) that could establish that these exhibits were part of the documents referenced in her designation or that these documents were in fact submitted to the court or DCSS or exchanged between the parties. Nor did she establish that these documents were before the court when it ruled. Accordingly, these documents were properly excluded from the appellate record. Exhibits 2, 3, and 4 are not in our appellate record, and Mortensen does not claim that she requested that they be included in the appellate record. Instead, she claims only that they are "part of the official DCSS record." Since she did not include these documents in her designation of the record or file a proper motion to augment the record with them, they are not part of the appellate record.

4

## II. THE APPELLATE RECORD

The paucity of the appellate record makes the background of this dispute difficult to discern. We understand that Mortensen involved respondent Santa Clara County Department of Child Support Services (DCSS) at some point.[1] The child support dispute resolved by the order that Mortensen challenges on appeal concerned three distinct periods between June 2017 and February 2019 and ongoing child support beginning in March 2019. Before this dispute was resolved in August 2019, Lichtenwalter had apparently been paying Mortensen $2,003 per month in temporary child support since 2017.

The appellate record contains April 2019 income and expense declarations from both Mortensen and Lichtenwalter. Mortensen's April 2019 income and expense declaration reported that her income in 2018 exceeded $27,000 per month. She declared that she paid monthly mortgage payments of $10,871, which included $6,300 of interest, and an additional $3,614 a month for property taxes. She also reported paying $1,200 a month for extracurricular activities for the children. Mortensen's total claimed monthly expenses were $23,929.

Lichtenwalter's April 2019 income and expense declaration reflected an average income in 2018 of $9,110 per month. He reported that he had been unemployed from October 31, 2018 to March 10, 2019, but had gotten a new job on March 11, 2019, for which his income was $13,667 per month. He had other income of approximately $1,500 per month. Lichtenwalter reported expenses of $8,860 per month, including $2,003 a month in child support to Mortensen.

Mortensen filed a trial brief on April 12, 2019, two weeks before the scheduled hearing. In her brief, she requested "a deviation from guidelines under Rule 5.260(b)(1) and Family Code section 4057(b)(5)(B)" based on "a substantial discrepancy in income

_____

[1] DCSS has filed a respondent's brief in this appeal.

5

spent on primary residence housing." She claimed that Lichtenwalter's rent for his primary residence was $2,195 per month while her mortgage payment on her primary residence was $8,197 per month. Mortensen asserted that their primary residences were "equivalent." Her trial brief requested that her $925.25 a month payments for the children's extracurricular activities, including Taekwondo and piano lessons, be "included in back arrears and child support calculations." She also asked the court to require Lichtenwalter to pay half the cost of the children's travel to Denmark to maintain their Danish citizenship. Lichtenwalter apparently did not file a trial brief.

At the April 26, 2019 hearing, the court resolved only two issues: the timeshare percentages and the parties' respective incomes during four distinct periods. Those periods were: (1) June 2017 to December 2017; (2) January 2017 to October 2018; (3) November 2018 to February 2019; and (4) March 1, 2019 forward. The court made income determinations for each period, and it was undisputed that Mortensen's income was nearly twice Lichtenwalter's income during all periods. Lichtenwalter was unemployed during the third period, and receiving only $1,950 per month in unemployment benefits.

The parties disputed the timeshare during the four-month period between August 12, 2017 and December 11, 2017. Mortensen claimed that the timeshare during that period was 71/29, while Lichtenwalter claimed that it was 64/36. The court decided to "split the difference," and determined that the timeshare was 67/33 during that period. It was undisputed that the timeshare was 50/50 at all other times. After making income and timeshare determinations, the court deferred the calculation of guideline support to an August 2019 hearing.

The guideline calculations prepared for the August 2019 hearing took into account precisely the amounts that each party was paying for rent and mortgage payments. At the August 2019 hearing, Mortensen requested a deviation with regard to "primary housing" because "I spend four times as much as Brian Lichtenwalter." The court responded:

6

"That would not be a consideration in *computing* child support." (Italics added.) It explained that "[t]he only way I can deviate down from [guideline child support] is if I take a look at your monthly expenses on your income and expense declaration, and if those monthly expenses, if I feel that they are reasonable and they exceed what your net disposable income is . . . ."

Mortensen contended that she was entitled to "request this deviation under rule 5.260(b)(1), and Family Code section 4057(b)(5)(B)." She claimed that she was paying over $100,000 per year for her "primary housing," and that Lichtenwalter was paying only $26,000 per year "for a similar residence." Lichtenwalter disputed her claimed mortgage expenses, as he had at the April 2019 hearing.

The court proceeded to calculate guideline support for each of the four time periods. For the first period, June 1, 2017 to December 2017, the court calculated guideline support as $327 per month from Lichtenwalter to Mortensen. When Mortensen asked about a deviation, the court said it would not "deviate up unless you are willing to stipulate for a lower amount," and the court expressed an unwillingness to litigate her claimed housing expenses for that period.

As to the second period, from January 2018 to October 2018, the court calculated guideline child support as $1,784 per month from Mortensen to Lichtenwalter. Mortensen again requested a deviation "[b]ased on the fact that my primary housing expenses are considerably higher for similar quality of housing under the guidelines previously noted, Family Code 4057(b)(3) and rule 5.260(b)(l)." The court responded: "And, of course, any deviation is discretionary with the court." It noted that Mortensen's income during that period was "almost double" Lichtenwalter's income. The court confirmed that it had considered that she was spending more for housing, but concluded that this circumstance did not merit a deviation. "Looking at your incomes, I think you can afford it; that's just my humble opinion." "For those reasons, I am going to deny your request for deviation." Mortensen complained that the denial of her request for a

7

deviation would render her unable to employ an attorney in the family law proceedings, but the court stated that this was not a relevant consideration and that it did not agree that it would have this impact.

For the third period, from November 2018 through February 2019, the court calculated guideline support as $3,226 per month from Mortensen to Lichtenwalter. However, the court found this amount "excessive." After closely examining Lichtenwalter's expenses during that period, the court deviated downward $1,000 and set child support for the third period at $2,226 per month from Mortensen to Lichtenwalter.

For the final period and ongoing child support, the court calculated guideline support as $1,448 per month from Mortensen to Lichtenwalter. Mortensen again requested a deviation "based on my considerably higher primary housing expenses," and the court denied the request. "Again, that request will be denied. The court feels that it would not be in the best interest of the children to do so because of disparity of income and the 50 percent time share . . . . I'm not going to deviate down."

The court's August 2019 order was consistent with its determinations at the hearing. The court also ordered the parties to use a "two-way Smith-Ostler Table" that was attached to the court's order to calculate how much additional child support was due based on any bonuses they received in the future.[2]

_____

[2] The court calculated the arrears due to Lichtenwalter from Mortensen based on its determinations as $31,000, and Mortensen announced, "I cannot pay that." After initially suggesting that it would order her to pay those arrears at a rate of $100 per month, Lichtenwalter noted that he had been paying Mortensen $2,000 a month in child support since June 1, 2017, which he argued amounted to $48,000 in overpayments. He sought recompense for his overpayments.

The court ordered that the arrears and overpayment amounts "be reconciled" so that the total due from Mortensen to Lichtenwalter could be determined. Mortensen again complained: "I cannot pay this. I cannot stay in my current residence if this continues." The court continued the case to October 2019 to determine the amount of arrears, the amount of Lichtenwalter's overpayments to Mortensen, and the applicable interest. It made no orders concerning the arrears and overpayments or the rate of (continued)

8

### III.   DISCUSSION

#### A.   Failure to Deviate

Mortensen's primary contention on appeal is that the trial court's denials of her requests to deviate from guideline support were erroneous because "special circumstances were established by my submissions," which she maintains Lichtenwalter "did not contest."  In her view, "failing to deviate was contrary to the best interests of the children" because there was "no disparity" in their incomes after expenses were taken into account.  She contends that she established that the guideline amount was "unjust" and therefore an abuse of discretion.

Mortensen relies heavily on Family Code section 4057 and California Rules of Court, rule 5.260, and she also cites Family Code sections 4053 and 4059.[3]  Section 4057 provides:  "(a) The amount of child support established by the formula provided in subdivision (a) of Section 4055 is presumed to be the correct amount of child support to be ordered.  [¶]  (b) The presumption of subdivision (a) is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence, and the court states in writing or on the record the information required in subdivision (a) of Section 4056:  [¶] . . . [¶]  (5) Application of the formula would be unjust or inappropriate due to special circumstances in the particular case.  These special circumstances include, but are not limited to, the following:  [¶] . . . [¶]  *(B) Cases in which both parents have*

---

"payback" but instead reserved those issues.  The court ordered that, after Lichtenwalter "open[s] a case with DCSS," "DCSS is to perform 2 audits."  One audit would show how much Lichtenwalter had overpaid to Mortensen in child support, and the other would show how much Mortensen owed Lichtenwalter in child support arrears.

[3] Statutory references are to the Family Code, and rule references are to the California Rules of Court.

*substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent.*" (§ 4057, italics added.)

Rule 5.260(b)(2) provides: "In its discretion, for good cause shown, the court may deviate from the amount of guideline support resulting from the computer calculation. If the court finds good cause to deviate from the statewide uniform guideline formula for child support, the court must state its findings in writing or on the record as required by Family Code sections 4056, 4057, and 4065."

Section 4053 describes the goals of guideline child support and provides that "[t]he guideline is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k).) Section 4059 provides the rules for determining a parent's net disposable income for guideline calculation purposes.

Mortensen argues that she established the special circumstance described in section 4057, subdivision (b)(5)(B) and therefore the court was *required* to deviate downwards from guideline support.

"Section 4057(b) provides that any deviation from the guidelines must be consistent with the principles in section 4053, which designates interests of the children as a top priority and provides that parents should support their children at a level commensurate with their ability. These principles seem primarily to mitigate *against downward deviation.*" (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1361, italics added.) "A child support order is reviewed for an abuse of discretion. [Citations.] We determine 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] We do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order. [Citation.]" (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753.)

10

We review the trial court's denial of Mortensen's request for a downward deviation under an abuse of discretion standard and decide only whether the trial court acted reasonably in exercising its discretion. The statutory framework mandates that any deviation from the guideline amount must be in the best interest of the children, which will rarely be the case for a downward deviation as it would mean less support is being provided for the children.[4]

While we accept that Mortensen pays more for her primary housing as a percentage of her income than Lichtenwalter pays for his primary housing as a percentage of his income, that fact did not obligate the trial court to find that it would be "unjust or inappropriate" for her to pay guideline child support.[5] (§ 4057.) Section 4057 grants trial courts *discretion* to deviate only where the court finds that a special circumstance would make the imposition of guideline child support "unjust or inappropriate." The determination of whether a particular special circumstance will have that effect in a particular case is committed to the discretion of the trial court, and we will not disturb the trial court's determination unless no court could reasonably make the determination that the trial court did. Although Mortensen claims that section 4053,

---

[4] Mortensen's reliance on *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 (*Cheriton*) does not advance her position. *Cheriton* did not concern a request for a *downward deviation* from guideline child support, but a request for an upward deviation due to a parent's "extraordinarily high income." (*Id.* at p. 284.) That is why the court was concerned with whether the child's needs merited an *upward* deviation. (*Id.* at p. 285.) The same is true of *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, which Mortensen also cites. As we have already pointed out, the best interests of the child will rarely merit *reducing* child support below guideline. Her reliance on *In re Marriage of Dacumos* (1999) 76 Cal.App.4th 150 is misplaced. That case did not concern a deviation from guideline child support at all but how a parent's income should be determined. (*Id.* at pp. 154-155.)

[5] Mortensen refers in her opening brief to various alleged facts concerning her residence and Lichtenwalter's residence. She does not cite any documentation *in the appellate record* to support these assertions. Since the appellate record contains no support for these assertions, we disregard them.

11

subdivision (g) *required* the trial court to grant her request, nothing in that statute imposes any such requirement.[6]

Here, the trial court rejected Mortensen's downward deviation request because "it would not be in the best interest of the children," Mortensen's income was "almost double" Lichtenwalter's income, and "I think you can afford it." These findings support the trial court's implied determination that the disparity in housing costs did not render guideline child support unjust or inappropriate. We cannot characterize these findings as unreasonable or unsupported by the record. The income and expense declarations established that Mortensen's income was nearly double Lichtenwalter's income, guideline child support imposed by the trial court was not a burdensome amount in the context of Mortensen's high income, and, despite her claims to the contrary, the trial court could reasonably have concluded that her income was adequate to allow her to pay guideline child support.

Mortensen concedes she had the burden of establishing that guideline child support would be unjust or inappropriate. However, she narrowly focuses on the raw disparity between the percentage of her income that her mortgage payments for her primary residence consumed and the percentage of his income Lichtenwalter's rent payments for his primary residence consumed. The trial court reasonably could have concluded that this raw disparity did not make guideline child support "unjust or inappropriate." Mortensen does not dispute that more than half of her mortgage payments were interest, and, as the trial court and Lichtenwalter's trial counsel pointed out below, the after-tax burden of mortgage interest is considerably reduced by tax

---

[6] That subdivision states: "Child support orders in cases in which both parents have high levels of responsibility for the children should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes." (§ 4053, subd. (g).) This subdivision does not address deviations from guideline support.

12

benefits. In sum, on this record, we find no abuse of discretion in the trial court's denial of Mortensen's requests for downward deviations from guideline child support.[7]

### B. Extracurricular Expenses

Mortensen contends that the trial court abused its discretion in rejecting her request that it "include" her expenses for the children's "extracurricular" activities in calculating guideline support.

Her income and expense declaration identified as an expense $1,200 for "CHILDREN'S ACTIVITIES," without further detail. She told the court at the April 2019 hearing that she spent $925 a month for extracurricular activities, which she identified in her trial brief as Taekwondo, piano, swim team, and Mandarin lessons.[8] The trial court noted that Mortensen was asking that these expenses "be included in . . . child support calculations," and it told her that "extracurriculars such as that are not added in."

Mortensen argues that her payments for these activities demonstrated her "level of responsibility" for the children and therefore section 4053, subdivision (c) justified the inclusion of these expenses in calculating guideline support. That subdivision states: "The guideline takes into account each parent's actual income and level of responsibility for the children." (§ 4053, subd. (c).)

Mortensen identifies no authority for her claim that a parent's payment of extracurricular expenses plays a role in calculating guideline support. She misunderstands the import of section 4053, subdivision (c). It does not identify bases for trial courts to make ad hoc adjustments to the inputs into the formula that calculates guideline support.

---

[7] We note that Mortensen retains the option to file a motion to modify child support.

[8] She contends on appeal that the children's extracurricular activities "includ[ed] swimming, taekwondo, and music."

13

Mortensen cites section 4062, subdivision (b), but, as the trial court noted, extracurricular activities do not fall within this subdivision, which pertains to additional child support. It provides: "The court *may* order the following as additional child support: [¶] (1) Costs related to the educational or other special needs of the children." (§ 4062, subd. (b), italics added.) Under this provision, a trial court has *discretion* to order additional child support only for "educational or other special needs." (*Ibid.*)

Mortensen concedes that she made no attempt below to show that the children's "extracurricular" activities fell within this limitation. On appeal, she argues that the activities she paid for are "a need" for "more affluent families" like hers. She did not make this argument below or present any evidence in support of it. We reject Mortensen's unsupported contentions and conclude that the trial court did not err in rejecting her request that these expenses be included in the calculation of guideline support or ordered as additional child support.

### C. Due Process

Mortensen complains that the trial court's child support order must be reversed because the court violated her due process rights. She contends that the trial court erroneously failed to (1) require Lichtenwalter to file a trial brief, (2) "enforce" her "right" to a court-ordered "meet and confer" with Lichtenwalter's counsel, (3) ensure that she had adequate time to review documents, (4) allow her to fully present her case, (5) notify the parties in advance that it would be making health insurance coverage orders, (6) ensure that she approved of the "Smith-Ostler" bonus table attached to the child support order, and (7) ensure that she was not prejudiced by her self-represented status.

### 1. Lack of Trial Brief

She claims that rule 5.393 *requires* a trial court to rule on whether to require a trial brief, and she argues that the court was therefore obligated to order Lichtenwalter to file a

14

trial brief.  Mortensen maintains that Lichtenwalter's failure to file a trial brief gave him "an unfair advantage."

Mortensen misstates rule 5.393.  This rule provides:  "The judge *may* schedule a conference with the parties and their attorneys before any trial or long-cause hearing.  [¶] . . . [¶]  The judge must determine *at the conference whether to require* each party to submit a trial or hearing brief.  If trial briefs will be required, they must comply with the requirements of rule 5.394."  (Rule 5.393(b), italics added.)

Nothing in this rule requires that a judge order a party to file a trial brief.  This rule does not *require* a trial judge to *schedule a conference* before a hearing.  If no conference is scheduled, the trial court need not rule on whether to require the filing of trial briefs.  The appellate record in this case does not reflect whether the trial judge in fact scheduled a conference before the April 2019 hearing.[9]  Even if such a conference was scheduled, nothing in this rule required the trial judge to order the submission of trial briefs.  When a conference is scheduled, the rule merely obligates the court to decide whether to require trial briefs.  Even if a conference was held, we must presume that the trial judge did not require trial briefs.  We can discern no violation of this rule.

Mortensen complains that when she pointed out the lack of a trial brief from Lichtenwalter, the trial court should have "stop[ped] the proceedings immediately" and required Lichtenwalter to file a trial brief.  She identifies no relevant authority for this proposition, instead citing the Code of Judicial Ethics and the 14th Amendment to the United States Constitution.  Neither that code nor the federal constitution imposes an obligation on a trial court to require the filing of a trial brief.  Mortensen's choice to file a trial brief did not impose a corresponding obligation on Lichtenwalter to follow suit.  The purpose of the hearings was to set child support, and the issues that Mortensen raised

---

[9] Mortensen claims that various "status conferences" prior to the hearing must have been the pretrial "conference" mentioned in this rule.  Nothing in the record reflects that the trial court scheduled any pretrial conference.

15

in her trial brief were addressed at the hearings.  Lichtenwalter did not raise additional issues outside the scope of these issues.  In any case, the court was not obligated to require a trial brief, and therefore Lichtenwalter was not obligated to file one.  We see no due process violation.

## 2.    Meet and Confer

Mortensen asserts that the trial court erred in failing to order that she and Lichtenwalter meet and confer before the hearings.  She premises this claim on rule 5.98.  That rule provides:  "All parties and all attorneys are required to meet and confer in person, by telephone, or as ordered by the court, before the date of the hearing relating to a *Request for Order* (FL-300).  During this time, parties must discuss and make a good faith attempt to settle all issues, even if a complete settlement is not possible and only conditional agreements are made."  (Rule 5.98(a).)  "Before or while conferring, parties must exchange all documentary evidence that is to be relied on for proof of any material fact at the hearing.  At the hearing, the court may decline to consider documents that were not given to the other party before the hearing as required under this rule.  The requirement to exchange documents does not relate to documents that are submitted primarily for rebuttal or impeachment purposes."  (Rule 5.98(b).)

Mortensen asserts in her brief that "Lichtenwalter's original complaint filed on December 7, 2016, requesting a change in child support was filed on form FL-300, making Rule 5.98 applicable."  Even if we assume as much (the record contains no such pleading), the appellate record does not indicate whether or not any meet and confer occurred between December 2016 and the April 2019 hearing.[10]  Accordingly, there is no foundation for Mortensen's contention.  She claims that the court was obligated to order Lichtenwalter and her to meet and confer between a February 2019 hearing and the April 2019 hearing.  While rule 5.98 creates an obligation upon parties to meet and

---

[10] Mortensen asserts in her reply brief that no meet and confer ever occurred, but the record contains no evidence on this point.

confer, it does not require a court to order them to do so. Nothing prevented her from contacting Lichtenwalter's attorney prior to the April 2019 hearing to meet and confer, and the appellate record does not reflect that Lichtenwalter's attorney refused to meet and confer with her. We find no due process violation.

### 3. Failure to Require Timely Service of Documents

Mortensen contends that the trial court violated her due process rights by failing to require timely service of documents.

First, she asserts that she received documents on February 26, 2019, when the hearing was then scheduled for March 1, 2019. Since the hearing did not take place until two months later, on April 26, 2019, we reject her claim that she was deprived of due process by the service of documents in February 2019 for an April 2019 hearing. Obviously, she had adequate time to review these documents.

Second, she asserts that Lichtenwalter did not provide her with documents concerning their timeshare until the day of the April 2019 hearing. She does not assert any prejudice from this late disclosure. The difference between the two parties' claims concerning the timeshare during the only disputed period was miniscule, and the trial court ultimately resolved the dispute by splitting the small difference.[11] We cannot see how the late disclosure of the documents played any role in this determination.

Third, Mortensen contends that she was deprived of due process because DCSS did not provide the guideline printouts to her until the day of the August 2019 hearing.

---

[11] She highlights an exchange concerning the percentage of timeshare for the period from June 2017 to December 11, 2017. On December 11, 2017, the timeshare was changed to 50/50. Although Mortensen originally suggested that it might have been 80/20 between June 2017 and December 11, 2017, she accepted that 65/35 for the entire period was accurate. They agreed that the timeshare was 50/50 from June to August 12, 2017. The sole dispute was about August 12 to December 11, 2017. After a very detailed discussion, the dispute came down to her claim that it was 71/29 during that four-month period, and his claim that it was 64/36 during that period. The court decided to "split the difference," and determined that the timeshare was 67/33 during that period.

She maintains that "rule 3.394(b)" required these documents to be provided to her at least five court days before the hearing. Since there is no such rule, we assume she means rule 5.394(b). Rule 5.394(b) provides that a "brief" must be served at least five days before the hearing, and it applies only where a court orders that a trial brief be filed. The record does not reflect that the trial court ordered the filing of trial briefs. In any event, rule 5.394(b) says nothing about *evidence*, which is what the guideline printouts were.

Mortensen claims that the printouts "contained multiple inaccuracies," though she neither describes these alleged "inaccuracies" nor provides a record citation to support her claim in her opening brief. In her reply brief, she identifies numerous figures that she claims were erroneous.

We lack the authority to review on appeal her challenge to the *accuracy* of the guideline printouts, which she did not object to below. She claims that she was deprived of the opportunity to object below because she was afforded no time to review the guideline printouts. Yet she did not request a continuance of the hearing to allow her additional review time. Hence, we reject her contention that she was deprived of due process in connection with the guideline printouts.

### 4. Time To Present Case

Mortensen argues that the trial court did not permit her to present her case in full thereby violating her right to due process. She points to a portion of the transcript of the August 2019 hearing during which the court was considering a downward deviation for the four-month period when Lichtenwalter was unemployed.

After the court expressed the opinion that the guideline amount was "excessive" (an opinion that was favorable to Mortensen), Lichtenwalter's trial counsel agreed. The court proceeded to inquire of Lichtenwalter and his trial counsel about Lichtenwalter's income and expenses during that period. During this discussion, Lichtenwalter tried to clear up an ambiguity about how much he was paying in rent for his primary residence as

18

opposed to how much he was paying for the mortgage on his rental property. He said his rent was $2,550. Mortensen objected to Lichtenwalter's statement that his rent was $2,550. The court asked her not to interrupt. Lichtenwalter again stated that his rent was $2,550. The court then called on Mortensen, and she again objected: "There's been no document submitted for the rental. It's been 2,195; so I don't know where 2,500 or 2,700 is coming from." The court apparently accepted Lichtenwalter's statement of the amount of his rent. It nevertheless decided to deviate downward $1,000 per month for that period because it found Lichtenwalter's claimed expenses to be excessive. After it did so, it permitted Mortensen to make additional comments. She inquired as to whether Lichtenwalter had been permitted to claim daycare expenses during that period, and the court confirmed that he had not.

We do not see any improper restriction by the court on Mortensen's ability to present her case. Instead, we see a court attempting to enforce proper courtroom decorum by not permitting one party to interrupt the other party or attorney or the court. Since the court did permit Mortensen to address the issue that was under discussion, we see no improper restriction on her ability to present her case.

### 5.    Health Insurance Coverage

Mortensen complains that the court did not properly acknowledge that she was paying for the children's health insurance before imposing "standard health care orders," which required *both parties* to provide health insurance coverage. She claims that there was no notice that the court was going to rule that both of them were required to maintain health insurance. But it is unclear how she could have been prejudiced by this order since she acknowledges that she had already been ordered to pay for the children's health insurance coverage. She seems to be objecting to Lichtenwalter also being ordered to pay for health insurance coverage. She claims that she had "the sole right to provide

19

health insurance for the children . . . ."[12] We fail to see any denial of due process in the trial court's imposition of a duplicative order that Mortensen pay for health insurance coverage, and we do not understand how she has been prejudiced by an order requiring Lichtenwalter to also pay for such coverage.

### 6.    Smith-Ostler Table

Mortensen complains that she was not given the opportunity to review the "Smith-Ostler" table that the court attached to its order before the court ruled that it would be used to calculate the amount of each parent's bonus that would be paid to the other parent as additional child support.

At the August 2, 2019 hearing, the court ordered "counsel" to prepare "a Smith-Ostler bonus table." Lichtenwalter's trial counsel told the court that he had not yet prepared the table because he "didn't have enough information" to do so. He expressed uncertainty as to whether the table should require "ten percent per child" or "21 percent for the children." The DCSS representative offered to print out the table, and Lichtenwalter's trial counsel said he would do so as well. The court stated: "I will make a general order with respect to *Smith-Ostler*." Mortensen expressed no concerns at the hearing about the Smith-Ostler table being prepared later. Ultimately, Lichtenwalter's counsel said that he would prepare the table, email it to DCSS and Mortensen, "[a]nd if she signs off on it, then" to the court.

The court's August 13, 2019 order attached the guideline printouts and the Smith-Ostler table. It ordered the parties to use "the attached two-way Smith Ostler Table." The attached table required Lichtenwalter to pay a percentage varying from 10.61 percent to 9.52 percent (with the largest percentage applicable to the smallest bonus amount) on any bonus he received up to $100,000. It similarly required Mortensen to pay a

---

[12] She asserts that the children could not be covered by two policies, but she cites no support for this assertion.

20

percentage varying from 9.59 percent to 8.93 percent on any bonus she received up to $100,000.

Mortensen claims that she was never given the opportunity to review and sign off on the table before it was included in the order. The appellate record does not contain any indication that she was deprived of that opportunity. Instead, Mortensen again relies on documents she has improperly attached to her brief. Since her claim is based on matters outside the appellate record, it cannot succeed.

### 7. Pro Per Status

Mortensen argues that the court violated her right to due process by failing to intervene to ensure that she was not prejudiced by her status as a self-represented party. We disagree with her characterization of the record. The court made substantial efforts to explain the procedures to Mortensen and to permit her to have her contentions addressed. She actively advocated for her positions, and the court allowed her to do so. The fact that she disputes the court's rulings does not demonstrate that the court failed to accord her due process.

### IV. DISPOSITION

The order is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
WILSON, J.

_____
BROMBERG, J.

*Mortensen v. Lichtenwalter*
**H047460**